# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Civil Action No. 1:17-cv-02004-RM-STV

ALFRED BROWN,

      Plaintiff,

v.

MARK T. ESPER, Secretary of Defense, and
U.S. DEPARTMENT OF DEFENSE,

      Defendants.

---

## ORDER

---

This matter is before the Court on Defendants' motion for summary judgment (ECF No. 65). The motion has been fully briefed. (ECF Nos. 96, 106.) The Court has reviewed the pleadings, case file, and applicable law and now grants the motion for the reasons stated below.

## I.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a

matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

## II.     BACKGROUND

The following facts are either undisputed or viewed in the light most favorable to Plaintiff. Plaintiff worked as a healthcare fraud specialist for Defendant U.S. Department of Defense at the Defense Health Agency ("DHA"), formerly known as TRICARE, from April 2010 until July 2014. Although Plaintiff suffers from post-traumatic stress, panic, and anxiety disorders, he received satisfactory performance appraisals throughout his employment. Plaintiff's first level supervisor was Joseph O'Brien; his second level supervisor was John Marchlowska.

From September to November 2011, Plaintiff took leave under the Family Medical Leave Act due to "a severe exacerbation of his disabling conditions." (ECF No. 1, Compl. at ¶ 42.) When he returned, he contends that Mr. O'Brien and Mr. Marchlowska subjected him to greater scrutiny than his nondisabled coworkers with respect to breaks, leave, work product, and interpersonal skills (*id.* at ¶ 43); that he was "assigned more work and more difficult assignments" than his nondisabled coworkers (*id.* at ¶ 44); and that "Mr. O'Brien made hostile and negative comments about [his] disabling conditions" to him and his coworkers (*id.* at ¶ 46).

In addition, Plaintiff alleges that his supervisors revoked certain privileges—such as teleworking, working on weekends, and working outside core hours—that he previously had and that his nondisabled coworkers continued to have.  (*Id.* at ¶ 45.)

Perceiving that his work environment was becoming increasingly hostile and exacerbating his medical conditions, Plaintiff "began formally requesting specific reasonable accommodations for those conditions in May 2012."  (*Id.* at ¶ 47.)  His request for accommodations included being allowed to telework two days per week, being allowed to work on weekends, and reassignment.  (ECF No. 106-1 at ¶ 13.)  Plaintiff alleges that Mr. O'Brien delayed responding the request, would not consider it until Plaintiff submitted updated medical information, and did not engage in good faith in the interactive process to determine appropriate reasonable accommodations.  (ECF No. 1 at ¶ 48.)  That same month, Plaintiff filed an informal Equal Employment Opportunity ("EEO") complaint against DHA, alleging disability discrimination and retaliation under the Americans with Disabilities Act ("ADA").

Plaintiff filed his first formal EEO complaint in July 2012.  Days afterward, DHA offered Plaintiff a list of accommodations, including some, but not all, of the ones he had requested, as well as others he had not requested.  DHA stated it that it was unable to provide the accommodations of teleworking two days per week and working outside of core hours and on weekends.  (ECF No. 65-13 at 1.)  Although Plaintiff accepted some of the other accommodations offered, he informed Mr. O'Brien that he believed they were insufficient, and, according to the complaint, "the hostile work environment continued."  (ECF No. 1 at ¶ 52.)

In August 2012, Plaintiff submitted a letter from his doctor, who recommended allowing Plaintiff to work from home a few days per week and to work on weekends, and further suggested that if these and other recommendations were insufficient to minimize Plaintiff's

stress, he might need to be reassigned to another position. (ECF No. 65-15.) Plaintiff alleges

that DHA "failed to respond" to his request "or engage in the interactive process." (ECF No. 1

at ¶ 54.) Plaintiff alleges that his work environment continued to deteriorate and that his

disabling conditions were exacerbated. (*Id.* at ¶ 56.)

In June 2013, Plaintiff filed a second informal EEO complaint, alleging continuing

disability discrimination and retaliation. That month, Plaintiff had a meeting with

Mr. Marchlowska, who denied Plaintiff's request for reassignment. (ECF No. 65-23 at 1.)

In August 2013, Plaintiff filed a second formal EEO complaint and submitted another

letter from his doctor, who made recommendations similar to the ones she made a year earlier.

(ECF No. 65-6 at 5.) DHA did not provide any additional accommodations.

On September 4, 2013, Plaintiff met with Mr. O'Brien in his office. According to the

complaint, Mr. O'Brien behaved aggressively toward Plaintiff and "attempted to intimidate

and/or provoke Plaintiff into a physical altercation." (ECF No. 1 at ¶ 60.) However, a DHA

investigation into the incident concluded that Plaintiff "initiated a heated discussion with

[Mr. O'Brien]," repeatedly interrupted Mr. O'Brien, and threw a folder that hit Mr. O'Brien in

the chest. (ECF No. 97-18, Letter of Reprimand at 1.) The complaint alleges that after the

incident, Mr. O'Brien told other employees and the Federal Protective Service that Plaintiff had

assaulted him and that Plaintiff was going to be fired. (ECF No. 1 at ¶ 61.) Plaintiff was

temporarily banned from DHA and placed on administrative leave while DHA investigated the

incident.

In October 2013, Plaintiff returned to work. He received a formal letter of reprimand

from Mr. Marchlowska regarding the September 4 incident. (*Id.* at ¶ 65.) The letter explained

that Plaintiff had a right to appeal DHA's decision (ECF No. 97-18 at 1), but there is no evidence

that Plaintiff did so. Mr. O'Brien was not disciplined. Plaintiff alleges that his "work environment further deteriorated" and that "[t]he lack of sufficient accommodations continued to interfere with his ability to perform his job." (ECF No. 1 at ¶ 66.)

In January 2014, Mr. Marchlowska issued Plaintiff a leave restriction letter. (ECF No. 97-19.) The letter informed Plaintiff that due to his "incorrect pattern for requesting leave," further absences had to be requested and approved in advance. (*Id.* at 1.)

In July 2014, Plaintiff again requested reassignment. That same month, he filed a third informal EEO complaint, alleging continuing disability discrimination and retaliation. Two days later, he resigned.

In September 2014, Plaintiff filed his third formal EEO complaint against DHA, still alleging discrimination and retaliation and adding a claim for constructive discharge.

In March 2015, Plaintiff alleges that, in its discovery requests, DHA disclosed information protected by the Privacy Act to his former coworkers. (ECF No. 1 at ¶ 75.)

By May 2017, Plaintiff had exhausted his administrative remedies with respect to his second and third EEO claims, which were consolidated. (*Id.* at ¶¶ 26, 30.)

In June 2017, Plaintiff alleges that DHA committed further violations of the Privacy Act by storing files containing his protected information on a shared drive in DHA's computer system. (*Id.* at ¶ 76.)

In August 2017, he filed this lawsuit against DHA, asserting claims under the Rehabilitation Act and the ADA for (1) failure to accommodate, (2) disability discrimination, (3) constructive discharge, and (4) retaliation, and a claim for (5) violation of the Privacy Act.

## III. DISCUSSION

### A. Rehabilitation Act and ADA Claims

The Rehabilitation Act and the ADA offer "parallel" protection against disability discrimination. *See Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 n.7 (10th Cir. 1998); *see also Sanchez v. Vilsack*, 695 F.3d 1174, 1177 n.2 (10th Cir. 2012) ("Regardless of whether suit is filed under the Rehabilitation Act or under the [ADA], the substantive standards for determining whether an individual is disabled are the same."). Neither party has cited a substantive distinction between the statutes; therefore, the Court analyzes these claims together. *See Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 726 (10th Cir. 2011) (addressing Rehabilitation Act and ADA claims together where neither party argued distinct analysis was required).

Under § 501 of the Rehabilitation Act, "federal employers are charged with a greater duty to ensure the employment of disabled workers than are federal grantees or private employers," which are covered under § 504. *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997). Federal employers have "an affirmative duty to meet the needs of disabled workers and to broaden their employment opportunities." *Id.* at 1337-38. Disabled employees who can perform their job functions may require reasonable accommodations to allow them to enjoy the same privileges and benefits of employment that are enjoyed by nondisabled employees or to pursue therapy or treatment for their disabilities. *Sanchez*, 695 F.3d at 1181. The United States Court of Appeals for the Tenth Circuit has held that under §§ 501 and 504, a prima facie case consists of the same elements, while acknowledging that "the meaning of 'reasonable accommodation' . . . may vary due to the heightened duties ascribed to federal employers." *Woodman*, 132 F.3d at 1338. However, as discussed below, Plaintiff has not shown that DHA's greater duties to

6

accommodate disabled employees are implicated in this case, where he was able to perform the essential functions of his position with the accommodations provided and the additional accommodations he requested would have required modifying or eliminating essential functions of his position.

### 1. Failure to Accommodate

To state a claim for failure to accommodate, a plaintiff must make an initial showing that (1) he is disabled, (2) he is otherwise qualified for his position, and (3) he requested a plausibly reasonable accommodation. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017).[1] For present purposes, DHA concedes that Plaintiff can satisfy the first two requirements. Once the plaintiff shows there is evidence supporting a prima facie case, "the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima face case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id.* (quotation omitted).

It is undisputed that DHA did not provide Plaintiff all the accommodations he asked for, including his requests for "two or more days of telework per week; the option to work outside core business hours, including nights and weekends; the option of accruing and using credit hours; transfer to a different work group; or reassignment to a different position." (ECF No. 1 at ¶ 82.) DHA contends that Plaintiff has not presented evidence that his requested accommodations were reasonably plausible and that the requested accommodations would have posed an undue hardship on DHA. The Court agrees with DHA.

---

[1] Granting summary judgment in DHA's favor, the Court bypasses the issue of whether there is a genuine issue as to an adverse employment action to support this claim. Although the Tenth Circuit has recently held (in a case not decided on summary judgment) that an adverse employment action is required in all ADA discrimination claims, the court granted rehearing en banc in that case, and no opinion has yet been issued. *See Exby-Stolley v. Bd. of Cty. Comm'rs*, 906 F.3d 900, 911 (10th Cir. 2018), *reh'g en banc granted*, 910 F.3d 1129 (10th Cir. 2018).

Whether a request for accommodation is reasonable under the ADA is generally a mixed question of law and fact. *See Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004). However, "an employee's request to be relieved from an essential function of [his] position is not, as a matter of law, a reasonable or even plausible accommodation." *Id.* Because the purpose of accommodations is to enable an employee to perform the essential functions of his job, "an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job." *Mathews v. Denver Post*, 263 F.3d 1164, 1168-69 (10th Cir. 2001). It is not up to employees "to define the essential functions of their positions based solely on their personal viewpoint and experience." *Mason*, 357 F.3d at 1122. Rather, it is up to employers to describe the functions required to perform a position, and the Court does not second-guess their judgment if their descriptions are "job-related, uniformly enforced, and consistent with business necessity." *Id.* at 1119.

During Plaintiff's employment, DHA generally required employees to be physically present in the workplace during core workweek hours at least four days per week. DHA's description for Plaintiff's position states that "[w]ork is performed in an office setting." (ECF No. 65-3, Position Description at 5.) The Court declines to second-guess DHA's business judgment with regard to the essential functions of its employees. *See Mason*, 862 F.3d at 1121. Physical attendance in the workplace is an essential function of most jobs, and an employee's request to work from home is unreasonable as a matter of law if the employer has decided that physical presence at the workplace is an essential function of the position. *Punt*, 862 F.3d at 1051. As a result, Plaintiff's contentions that he could perform what he views as the essential functions of his job on a modified schedule or in a different position are unavailing. It is not relevant that Plaintiff and other employees were at times permitted to telework or to work during

8

non-core workweek hours.  It was for DHA to determine the amount of such work that was

consistent with the its mission.  DHA was not required to accommodate Plaintiff by modifying or

eliminating essential functions of his job.  *See Mason*, 357 F.3d at 1124; *Matthews*, 263 F.3d

at 1168-69.  Although Plaintiff contends DHA, as a federal employer, had a heightened duty to

find reasonable accommodations for him, he cites no authority, nor is the Court aware of any, for

the proposition that a federal employer has a duty to modify or eliminate essential functions of a

position.  Thus, to the extent Plaintiff's requested accommodations that would exempt him from

the requirement that he be physically present in the workplace during core workweek hours at

least four days per week, the Court finds such accommodations are not reasonable as a matter of

law.

Further, "[i]f more than one accommodation would allow the individual to perform the

essential functions of the position, the employer providing the accommodation has the ultimate

discretion to choose between effective accommodations, and may choose the less expensive

accommodation or the accommodation that is easier for it to provide."  *Smith v. Midland Brake,*

*Inc.*, 180 F.3d 1154, 1177 (10th Cir. 1999) (en banc) (quotation omitted).  An employee is not

entitled to the accommodation of his choice—only a reasonable accommodation.  *Id.* (quotation

omitted).  Although Plaintiff alleges that his disabling conditions were exacerbated because

DHA did not provide additional accommodations, he has not shown that he was unable to

perform any essential function of his position.  There is no dispute that Plaintiff received

satisfactory performance appraisals during his time at DHA (ECF No. 106-1 at ¶ 43), and he has

not identified any evidence to support his assertion that he was unable to perform his job when

he resigned.[2]  Because Plaintiff was able to perform the essential functions of his position, he cannot establish that the accommodations DHA provided were insufficient.

Although "a reasonable accommodation may include reassignment to a vacant position if the employee is qualified for the job and it does not impose an undue burden on the employer," *Sanchez*, 695 F.3d at 1180 (quotation omitted), Plaintiff has not presented evidence of circumstances requiring reassignment.  "When an employer selects among several possible reasonable accommodations, the preferred option is always an accommodation that keeps the employee in his or her existing job if that can reasonably be accomplished."  *Smith*, 180 F.3d at 1170.  Reassignment may be a reasonable accommodation when "[t]he preferred option of accommodation with the employee's existing job cannot reasonably be accomplished."  *Id.* at 1179.  As discussed above, however, Plaintiff has not shown that he could not perform the essential functions of the position he already held.  He does not argue that reassignment would have better allowed him to treat his disabling conditions.  *Cf. Sanchez*, 695 F.3d at 1182 (concluding that a transfer accommodation *for medical care or treatment* may be a reasonable accommodation even if an employee is able to perform the essential functions of her job without it).  DHA was not required to grant Plaintiff's requests for reassignment simply because he would have preferred different supervisors.

Because Plaintiff failed to establish the third element of a prima face case, DHA is entitled to summary judgment on his claim for failure to accommodate.  The Court further finds that DHA is entitled to summary judgment for the additional reason that Plaintiff has not shown

---

[2] This is not a case where the employee requested to be relieved of essential functions on a temporary basis. *See, e.g.*, *Rascon v. U.S. W. Commc'ns, Inc.*, 143 F.3d 1324, 1333-35 (10th Cir. 1998) (noting that whether attendance is an essential function is irrelevant when a reasonable accommodation of disability *leave* is at issue), *overruled on other grounds by New Hampshire v. Maine*, 532 U.S. 742 (2001).

there is a genuine issue with respect to DHA's affirmative defense of undue hardship. As discussed above, Plaintiff may not unilaterally redefine the essential functions of his position. Because Plaintiff's requests to telework or to work during non-core workweek hours would require DHA to modify or eliminate essential functions of his position, the Court finds there is no genuine issue that those accommodations would impose an undue hardship on DHA. Because his request for reassignment was not necessary to allow him to perform the essential functions of his position or for him to obtain medical care or treatment for his disabling conditions, the Court further finds that reassignment would impose an undue hardship on DHA.

2.  Discrimination

To establish a prima face case of discrimination, a plaintiff must show that (1) he belongs a protected class, (2) he suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007). "In general, only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011) (quotation omitted). "[A] mere inconvenience or an alteration of job responsibilities does not constitute an adverse employment action." *Id.* (quotation omitted). In addition, the plaintiff must also show that he suffered an adverse employment action *because of* his disability. *Id.* at 1038. One method by which a plaintiff can establish the third element is to show that the employer treated similarly situated employees more favorably. *PVNF*, 487 F.3d at 800-01.

DHA contends that Plaintiff has failed to establish the second and third elements of a prima facie case, and the Court agrees. Although Plaintiff contends that he could not enjoy the same conditions and privileges of his employment that his coworkers enjoyed, he has not shown that he experienced a significant change to his employment status or benefits rising to the level of an adverse employment action. Being placed on leave restriction and receiving a letter of reprimand did not change his employment status. *See id.*, 487 F.3d at 800 ("[A] written warning is an adverse employment action *only* if it effects a significant change in the plaintiff's employment status." (quotation omitted)). Nor has Plaintiff shown that his employment status was affected by the alleged scrutiny and criticism of his work product he received from Mr. O'Brien. Plaintiff's conclusory contention that "Mr. O'Brien overly scrutinized and criticized [his] work product as compared to his peers" (ECF No. 96 at 11) is insufficient to create a genuine issue of material fact on this issue. Even though Plaintiff is entitled to reasonable inferences in his favor at this stage, such inferences must be supported by evidence in the record, not merely speculation and conjecture. On this record, there is no evidence to support finding an adverse employment action by DHA.

Plaintiff has also failed to show circumstances giving rise to an inference of discrimination. He has not shown that coworkers to whom he was similarly situated would not have been placed on leave restriction or reprimanded for conduct comparable to his. The same reasoning applies to Plaintiff's conclusory allegation that he was treated differently by being barred from the building after the September 4 incident. Plaintiff makes no showing that his coworkers would have been treated differently had they engaged in conduct of comparable seriousness. Although Plaintiff alleges that some of his coworkers were provided accommodations that he was not provided, including being allowed to work evenings and

weekends and being allowed to telework two days per week, he has not shown that they held the same position as he did, that they worked in the same department or had the same supervisors, or even that they were provided these accommodations at the time Plaintiff worked at DHA. Thus, Plaintiff has not shown that he was treated less favorably than coworkers who were similarly situated to him.

Moreover, Plaintiff has not presented evidence that DHA took action against him *because of* his disabling conditions or that the actions he complains of were related to his requests for accommodations or his disabling conditions. Although he contends Mr. O'Brien declared he would "fix" Plaintiff (ECF No. 106-1 at 38, ¶ 16), this statement is insufficient to establish a connection between Plaintiff's disability and any conduct by DHA. Plaintiff has not identified specific comments by his supervisors that were directly related to his disabling conditions. The evidence is inadequate to support a finding that DHA took action against him because of his disabling conditions.

Plaintiff's contention that he was subjected to a hostile work environment is also unavailing. "A plaintiff claiming hostile work environment must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (quotation omitted). To determine whether this standard is met, courts consider all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it unreasonably interferes with an employee's work performance, and whether it is physically threatening and humiliating or limited to merely offensive utterances. *Id.* The plaintiff must also

13

"produce evidence from which a rational jury could conclude the employer took those actions *because of* his disability." *Id.* at 898.

Here, the evidence shows, at most, that Plaintiff had a stressful relationship with his supervisors and that Mr. O'Brien sometimes scrutinized Plaintiff's work, which led to the September 4 incident. After an investigation of that incident, Plaintiff was reprimanded, but Mr. O'Brien was not. There is no evidence that Plaintiff exercised his right to appeal DHA's decision. The Court finds this incident and the allegations pertaining to the overall circumstances are insufficient to establish that Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult. *See Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (concluding that two isolated comments did not amount to the "steady barrage" required to establish a hostile work environment). Further, Plaintiff again fails to adduce evidence that any relevant conduct by DHA that was undertaken *because of* Plaintiff's disability. As a result, Plaintiff falls well short of establishing conduct that was sufficiently severe or pervasive or actions by DHA that were taken because of his disabling conditions.

### 3. Constructive Discharge

"Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998) (quotation omitted). The plaintiff must show that the situation was objectively intolerable and that he had no other choice but to quit—his subjective views of the situation are irrelevant. *Id.*

Plaintiff relies on the same general allegations to support his claim for constructive discharge, and the Court finds he has not shown a genuine issue exists with respect to this claim. Plaintiff has identified few specific instances of alleged discrimination, without providing much

in the way of context or details. (*See, e.g.*, ECF No. 106-1 at 25, ¶ 56(3) ("Mr. Marchlowska also held a staff meeting where he implied that [Plaintiff] was dangerous.").) As discussed above, Plaintiff has presented evidence that his workplace may have been unpleasant but not that it was hostile. *See Sanchez*, 164 F.3d at 534 ("While we have no doubt that Ms. Sanchez found her working conditions extremely difficult, and that the stress exacerbated her health problems, we cannot conclude that objectively DPS's actions left Ms. Sanchez with no choice but to resign."). Plaintiff's subjective allegations, such as his testimony that he was treated like a "leper" at work (*id.* at 26, ¶ 56(8)), are not relevant. And conclusory allegations of "a pattern of escalating hostility" (ECF No. 96 at 13) are insufficient to raise a genuine issue of material fact. Plaintiff's evidence is insufficient to establish the existence of working conditions so intolerable that a reasonable person would have felt compelled to resign.

### 4. Retaliation

To establish a prima facie case of retaliation, the plaintiff must show (1) that he engaged in protected activity, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection exists between the protected activity and the materially adverse action. *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1265 (10th Cir. 2009). There is no dispute that Plaintiff engaged in protected activity by requesting accommodations and filing EEO complaints. An action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 n.4 (10th Cir. 2007) (quotation omitted). To establish a causal connection between protected activity and materially adverse action, the plaintiff may present evidence of temporal proximity or other evidence that that supports an

inference of retaliatory motive, such as demonstrated weakness of the employer's proffered reasons for the adverse action. *Id.* at 1208-09.

Plaintiff contends that DHA engaged in four instances of retaliation: (1) denial of his request to work outside normal business hours, (2) denial of his request for reassignment, (3) Mr. O'Brien's conduct during the September 4 incident and DHA's response, and (4) Mr. O'Brien's July 2014 e-mail, which Plaintiff characterizes as "scathing" and "particularly nasty." (ECF No. 96 at 17.) DHA contends that Plaintiff cannot establish that these actions were materially adverse or that a causal connection exists between these actions and Plaintiff's protected activity. DHA also contends that it has provided legitimate, non-retaliatory reasons for its actions, which Plaintiff has not shown to be pretextual. The Court agrees with DHA and therefore concludes it is entitled to summary judgment on this claim as well.

The first two alleged instances of retaliation have already been discussed in the context of evaluating Plaintiff's claim for failure to accommodate. The Court additionally finds here that the denial of these requests for accommodation does not amount to materially adverse action for the purposes of stating a retaliation claim. Nor can Plaintiff use the denials to establish pretext. DHA explained that most of Plaintiff's work could not be taken to telework locations, that supervisor staff were not available on weekends, and that supporting external customers required a somewhat rigid schedule. (ECF No. 65-16 at 1-2.) DHA has provided legitimate, non-discriminatory reasons for defining the essential functions of Plaintiff's position in the way that it did, and Plaintiff has not adduced evidence that these reasons are pretextual.

With respect to the September 4 incident, Plaintiff has not identified any similar incidents. Thus, the record indicates it was an isolated incident. Plaintiff has not shown that the incident itself or DHA's response constitutes a materially adverse action. DHA placed Plaintiff

on administrative leave while it investigated the incident. DHA concluded that Plaintiff, and not

his supervisor, had behaved improperly, and, as noted above, Plaintiff did not appeal DHA's

decision. Accordingly, Plaintiff has not adduced evidence that the investigation or the letter of

reprimand were pretextual.

With respect to the fourth instance of alleged retaliation, the Court rejects Plaintiff's

contention that Mr. O'Brien's July 2014 e-mail to Plaintiff was "scathing" or "particularly

nasty." (ECF No. 96 at 17.) The Court has reviewed the e-mail (ECF No. 97-14) and finds no

basis to support Plaintiff's characterization of it. The apparent purpose of the e-mail was to

inform Plaintiff that his latest request for a transfer was being denied. To the extent Mr. O'Brien

expressed frustration in the e-mail, that is readily explained by the circumstances, namely,

Plaintiff's history of complaints about leadership and requests for accommodations. There is no

mention of Plaintiff's disabling conditions, much less any indication that the tone of the e-mail

reflects animus against Plaintiff because of his disabling conditions. In any event, the Court

finds it is insufficient on its own, or in combination with the other evidence, to establish a

materially adverse action by DHA.

With respect to all the alleged instances of retaliation, the Court finds that none of them

would dissuade a reasonable employee from engaging in protected activity, such as filing EEO

complaints. *See Johnson v. Weld Cty.*, 594 F.3d 1202, 1216 (10th Cir. 2010). The Court notes

as well that Plaintiff filed informal and formal EEO complaints throughout his employment,

indicating that none of the allegedly retaliatory conduct he complained about dissuaded him from

continuing to file complaints of discrimination against DHA. *See Somoza v. Univ. of Denver*,

513 F.3d 1206, 1214 (10th Cir. 2008) ("[T]he fact that an employee continues to be undeterred in

his or her pursuit of a remedy, as here was the case, may shed light as to whether the actions are

sufficiently material and adverse to be actionable."). Accordingly, DHA is entitled to summary judgment on Plaintiff's retaliation claim.

### B.     Privacy Act Claim

"The Privacy Act directs agencies to establish safeguards to protect individuals against the disclosure of confidential records which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained." *FAA v. Cooper*, 566 U.S. 284, 294-95 (2012) (quotation omitted). "To prevail on a violation of the Privacy Act, a plaintiff must demonstrate that (1) the information is a record within a system of records, (2) the agency disclosed the information, (3) the disclosure adversely affected the plaintiff, and (4) the disclosure was willful or intentional." *Luster v. Vilsack*, 667 F.3d 1089, 197 (10th Cir. 2011) (quotation omitted).

Plaintiff contends that DHA wrongfully disclosed Mr. O'Brien's electronic files pertaining to Plaintiff that contained his personal information. (ECF No. 96 at 18.). He contends that at least two DHA employees found the files in a folder labeled "Mr. O'Brien" on the "Common Share" drive of DHA's computer system. (ECF No. 106-1 at 46, ¶ 38.) Plaintiff further contends that he incurred legal fees to have the files removed from the shared drive and that the disclosures exacerbated his condition and required him to take time off his new job. Finally, he contends that because DHA personnel receive annual training on the Privacy Act, the disclosure must have been willful or intentional.

For present purposes, the Court assumes that the files pertaining to Plaintiff fall within the category of records covered by the Privacy Act. But Plaintiff has failed to present evidence sufficient to establish the other elements of a claim. In this context, "disclose means the placing into the view of another information that was previously unknown," and "it requires that a

disclosure actually occurred." *Luster*, 667 F.3d at 1098 (quotations omitted). The possibility that

a record might be revealed to unauthorized readers is insufficient to constitute a prohibited

disclosure. *Id.* Plaintiff has not adduced evidence that anyone accessed the files at issue, as

opposed to simply noticing that the files were located on the shared drive. Nor has he identified

any information that anyone derived from the files. The mere fact that other DHA employees

knew Plaintiff had an EEO case does not give rise to the inference that such knowledge was

obtained from these files. *See Gowan v. U.S. Dep't of Air Force*, 148 F.3d 1182, 1193 (10th Cir.

1998) ("The disclosure of information derived solely from independent sources is not prohibited

by the statute even though identical information may be contained in an agency system of

records." (quotation omitted)). Thus, Plaintiff has not provided evidence that a disclosure

occurred.

Plaintiff has also not established that any alleged disclosure adversely affected him or

was willful or intentional. Although Plaintiff contends that he incurred legal fees to have

information removed from the shared drive and that he missed time from work, he has not

presented evidence that the disclosure of any information from the files caused him substantial

harm, embarrassment, or inconvenience or was unfair. Moreover, "[a] disclosure is considered

intentional or willful under the Privacy act only if the action was so patently egregious and

unlawful that anyone undertaking the conduct should have known it unlawful, or conduct

committed without grounds for believing it to be lawful or action flagrantly disregarding others'

rights under the Act." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010) (quotation

omitted). The fact that DHA employees were able to locate files pertaining to Plaintiff on the

shared drive is not indicative of flagrant or egregious conduct rising to this level. Nor does the

fact that DHA employees received training on the Privacy Act mean that every alleged violation is intentional or willful.

Therefore, Defendants are entitled to summary judgment on Plaintiff's Privacy Act claim.

## IV. CONCLUSION

The Court GRANTS Defendants' motion for summary judgment (ECF No. 65). The Clerk is directed to CLOSE the case.

DATED this 18th day of December, 2019.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge